IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                    1:22-cr-00767-KWR-1

MARC CANDELARIA,

    Defendant.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Marc Candelaria's Motion to Suppress Evidence (Doc. 59). The Court held an evidentiary hearing on December 18, 2023. Having reviewed the pleadings and heard oral argument and testimony, the Court finds that Defendant's motion is not well taken, and therefore, is **DENIED**.

### BACKGROUND[1]

On October 30, 2021, a masked individual robbed a Bank of America branch at 101 Paseo De Peralta in Santa Fe, New Mexico. The bank robber, a darker skinned man driving a white sedan, held a note to the bank teller stating that a Mexican drug cartel was robbing the bank and demanded cash. The demand note threatened the teller and instructed him not to activate the alarm, use dye packs, or counterfeit bills.

In connection with a Santa Fe Police Department ("SFPD") investigation into a home invasion of Defendant's father-in-law, SFPD obtained a search warrant for Defendant's vehicle, a white 2017 Volkswagen Jetta. Defendant was a suspect in this investigation. SFPD impounded the vehicle and

---

[1] The Court is not making factual findings related to Defendant's conduct on the underlying charges in this Memorandum Opinion and Order.

during the search, discovered what they believed to be a handwritten bank robbery demand note in Defendant's vehicle.  On November 30, 2021, FBI Special Agent Sam Hartman contacted Defendant's wife, M.H., the registered owner of the vehicle, to both conduct an interview and seek permission to search the vehicle.  M.H. consented to the vehicle search.  The handwritten note seized by agents stated "Stay Calm!  No Alarms!  The cartel is making a withdrawal No Dye pack, no fake bills, if you listen we can all go home safe!  100's, 50's 20's no dye packs!!!!"  Special Agent Hartman believed the language in the note found in Defendant's vehicle resembled that used in the October 30, 2021, bank robbery.  Special Agent Hartman concluded that Defendant likely authored the demand note.

Defendant faces two charges, including: (1) bank robbery, in violation of 18 U.S.C. § 2113(a); (2) bank fraud, in violation of 18 U.S.C. § 1344(2).  Defendant now seeks suppression of the purported bank robbery note recovered from the FBI search of Defendant's vehicle as fruit of an unlawful search.

## DISCUSSION

### I.   Defendant's Wife Had Actual and Apparent Authority to Consent to the Vehicle Search

Defendant argues that his wife lacked actual and apparent authority to consent to the vehicle search.  Defendant contends that his wife lacked common authority over the vehicle since she did not use, keep belongings in, maintain, or exercise any control over it.  Therefore, M.H. lacked actual authority over the vehicle and could not consent to a search.  Furthermore, M.H. did not have apparent authority to consent to the vehicle search because the FBI knew Defendant was the sole driver, did not obtain his permission, and did not seek a warrant.  Therefore, it was unreasonable for the FBI to believe M.H. had the authority to consent to a vehicle search.  The Court disagrees and concludes that M.H. had both actual and apparent authority to consent to the vehicle search.

The Fourth Amendment protects against unreasonable searches and seizures conducted by law enforcement officers or other government agents.  U.S. Const. Amend. IV; *Katz v. United States*, 389

U.S. 347, 351 (1967).  Searches conducted without a warrant are per se unreasonable under the Fourth Amendment, "subject only to a few specifically established and well-delineated exceptions." *Id.*, at 357. One such exception to the warrant requirement is a search conducted pursuant to consent.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  For a search by consent to be valid, the Government has the burden of proving that consent was: (1) unequivocal, "freely and voluntarily given"; and (2) without duress or coercion, express or implied.  *Id.* at 222; *U.S. v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007). The burden of proving that consent to search was given freely and voluntarily is always on the Government on a motion to suppress.  *U.S. v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993).

Courts apply an objective reasonableness test to measure the scope of a person's consent, based on the totality of the circumstances surrounding a search.  *United States v. Kimoana*, 383 F.3d 1215, 1223 (10th Cir. 2004); *United States v. Price*, 925 F.2d 1268, 1270 (10th Cir. 1991) (citing *Schneckloth*, 412 U.S. at 227, 232–33, 249)).[2]  The Court may exclude unlawfully seized evidence in criminal prosecutions where a defendant's Fourth Amendment rights have been violated.  *United States v. Herrera*, 444 F.3d 1238, 1248 (10th Cir. 2006) (citing *Illinois v. Krull*, 480 U.S. 340, 347 (1987)).

"[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Yarbrough*, 852 F.2d 1522, 1533-34 (9th Cir.1988), cert. denied, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988) citing, *United States v. Matlock*, 415 U.S. 164, 171 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). ""Common authority" rests on

---

[2] Specifically regarding spousal consent, a spouse's consent is effective not just during periods of amicability. *United States v. Sealey*, 830 F.2d 1028 (9th Cir.1987); *McCravy v. Moore*, 476 F.2d 281 (6th Cir.1973); *United States v. Lawless*, 465 F.2d 422 (4th Cir.1972); *In re Lessard*, 62 Cal.2d 497, 42 Cal.Rptr. 583, 399 P.2d 39 (1965); *People v. Wieckert*, 191 Colo. 511, 554 P.2d 688 (1976); *State v. Crevina*, 110 N.J.Super. 571, 266 A.2d 319 (1970); *State v. Madrid*, 91 N.M. 375, 574 P.2d 594 (App.1978).

mutual use of the property by those generally having joint access or control so that it is reasonable to recognize that any of the parties has the right to permit inspection and others have assumed the risk that the third parties might consent to the search." *Yarbrough*, 852 F.3d at 1533; *Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7; *United States v. Gulma*, 563 F.2d 386, 389 (9th Cir. 1977). "If common authority is established, the person whose property is searched is unjustified in claiming an expectation of privacy in the property because that person cannot reasonably believe that the joint user will not, under certain circumstances, allow a search in her own right." *Rith,* 164 F.3d at 1328 citing, *McAlpine*, 919 F.2d at 1463.

Within this umbrella of common authority, in cases of third-party consent, a third-party "must have [had] actual or apparent authority to do so." *United States v. Sanchez*, 608 F.3d 685, 689 (10th Cir. 2010) quoting, *United States v. Thompson*, 524 F.3d 1126, 1132 (10th Cir. 2008). Secondly, the consent must be voluntarily and freely given. *Id*. Whether a party consents voluntarily and freely to a search is determined by the totality of the circumstances. *Sanchez*, 608 F.3d at 689 citing *United States v. Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998).

For actual authority, "the government bears the burden of proving by a preponderance of the evidence that [1] the consenter had mutual use of the property searched by virtue of her joint access to it, or [2] control for most purposes over it." *Rith*, 164 F.3d at 1329; *Matlock*, 415 U.S. at 171; *United States v. George*, 883 F.2d 1407, 1417 (9th Cir. 1989); *Yarbrough*, 852 F.2d at 1534. "Mutual use of property by virtue of joint access is a fact-intensive inquiry which requires findings by a court that the third party entered the premises or room at will, without the consent of the subject of the search." *Rith*, 164 F.3d at 1329-30.

"[C]ontrol for most purposes of property is a normative inquiry dependent upon whether the relationship between the defendant and the third party is the type which creates a presumption of control

for most purposes over the property by the third party.  If a relationship creates such a presumption of control and is unrebutted, the third party has authority to consent to a search of the property." *Id*. "Relationships which give rise to a presumption of control of property include…husband-wife relationships." *Id*. citing, *United States v. Ladell*, 127 F.3d 622, 624 (7th Cir.1997); *United States v. DiPrima*, 472 F.2d 550, 551 (1st Cir.1973).  "[A] husband-wife…relationship raises a presumption about the parties' reasonable expectations of privacy in relation to each other in spaces typically perceived as private in a co-tenant relationship." *Rith*, 164 F.3d at 1330.  In determining if a relationship creates a presumption of control, authority to conduct a search is based on a "practical understanding" of how the parties access property and share it. *Id*., citing *McAlpine*, 919 F.2d at 1463.  While husband-wife relationships can give rise to a presumption of control, this presumption can be rebutted through facts that establish an understanding or agreement that consent to enter is required.  *Id*.

"Even if the consenting party does not in fact possess actual authority to consent, a warrantless search may be justified when the authorities have reason to believe the consenting party has apparent authority." *Reeves v. State*, 1991 OK CR 101, Para. 39 818 P.2d 495 citing, *Yarbrough*, 852 F.2d at 1534; *United States v. Hamilton*, 792 F.2d 837, 841–42 (9th Cir.1986); *United States v. Sledge*, 650 F.2d 1075, 1077–78 (9th Cir.1981); s*ee also Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).  "[A] third party has apparent authority if the officer has a reasonable belief that the third party has (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it." *Cos*, 498 F.3d at 1128.  "[W]here an officer is presented with ambiguous facts related to authority, he or she has a duty to investigate further before relying on the consent." *Id*.  Apparent authority exists if "the facts available to the officer at the moment ... warrant a man of reasonable caution [to believe] that the consenting party had authority over the premises." *Kimoana*, 383 F.3d at 1222 citing, *Rodriguez*, 497 U.S. at 188.

5

In this case, the Court finds Defendant's wife had common authority via both actual and apparent authority to consent to the vehicle search. Under *Rith* via *Matlock*, the Government bears the burden of establishing that M.H. had either (1) mutual use of the property by virtue of joint access or (2) control over the vehicle for most purposes. *Rith*, 164 F.3d at 1329; *McAlpine*, 919 F.2d at 1463; *Rodriguez*, 497 U.S. at 2797; *George*, 883 F.2d at 1417; *Yarbrough*, 852 F.2d at 1534.

Here, both Defendant and his wife had mutual use of the property by virtue of joint access. M.H. purchased the vehicle, was the registered owner and insurance policyholder, made the vehicle's monthly payments, drove it several times, had access to a spare key, had joint property in the vehicle (a child's car seat), was the sole person who could retrieve the vehicle after its impoundment, and subsequently sold it. Exs. 4-10. A "common authority" determination via mutual use "does not rest solely on abstract principles of property, but rather stems from a practical understanding of the way in which the parties to a given relationship have access to and share certain property." *McAlpine*, 919 F.2d at 1463. M.H. certainly had extensive property rights in the vehicle and while Defendant was the primary driver, Defendant's wife had unrestricted, joint access to it when needed. Nor has Defendant demonstrated that he had an exclusive expectation of privacy in the vehicle against his wife and that it would have been unreasonable for her to permit a search in her own right. *Rith,* 164 F.3d at 1328, 1330 citing, *McAlpine*, 919 F.2d at 1463. While Defendant may have very well been the primary driver, the record does not rebut the martial presumption by establishing an understanding or agreement that M.H. needed consent to enter or use the vehicle. To hold that absent an agreement, Defendant's wife, the owner and insurer, still lacked joint access to the vehicle would be unreasonable. Therefore, this Court finds when weighing the totality of the circumstances, M.H. had mutual use of the property by virtue of joint access and therefore, had common and actual authority to consent to the vehicle search.

This Court also finds M.H. had control over the vehicle for most purposes, which also establishes actual authority. In determining control of the vehicle for most purposes, "the relevant analysis in third-party consent cases focuses on the relationship between the consenter and the property searched, not the relationship between the consenter and the defendant. While the character of the relationship between the consenter and the defendant may bear on the nexus between the consenter and the property, it is not dispositive of the issue of effective consent." *McAlpine*, 919 F.2d at 1464. While Defendant drove the vehicle day to day, M.H. purchased the vehicle, was the registered owner and insurance policyholder, made the vehicle's monthly payments, drove it several times, had access to a spare key, had joint property in the vehicle, was the sole person who could retrieve the vehicle after its impoundment, and subsequently sold the car after paying off its loan balance. Exs. 4, 5, 6, 7, 8, 9, 10. This, in conjunction with the marital presumption, further bears on the nexus of M.H.'s relationship to the vehicle. While Defendant established that he primarily used the vehicle and contributed $2,000-$2,500 to household monthly expenses, which included the car payment, he has not offered evidence establishing a "practical understanding" or an agreement between him and his wife that rebuts the marital presumption of control.[3] Under this marital presumption, absent an agreement to the contrary, it would have been unreasonable for Defendant to have an expectation of privacy in the Volkswagen against his wife. *See United States v. George*, 883 F.2d 1407, 1417 (9th Cir. 1989). This, in conjunction with M.H's property rights and extensive ties to the vehicle, move this Court to find that Defendant's wife had control over the vehicle for most purposes. Therefore, this Court finds that M.H. has actual authority to consent via control over the vehicle for most purposes.

Alternatively, this Court finds M.H. had apparent authority to consent to the vehicle search. "[A] third party has apparent authority if the officer has a reasonable belief that the third party has (1) mutual

---

[3] While Defendant contributed to monthly household expenses, which he asserts included the Volkswagen Jetta cay payment, Defendant ceased his monthly contributions once police impounded the vehicle.

7

use of the property by virtue of joint access, or (2) control for most purposes over it." *Cos*, 498 F.3d at 1128.  As the purchaser, registered owner, and insurance policyholder with joint access to the vehicle, it was reasonable for FBI Special Agent Sam Hartman to believe she could consent to the search.  Special Agent Hartman understandably did not reach out to Defendant for his consent because she was the registered owner.  This Court finds that it was reasonable for the FBI to believe that M.H. had mutual use of the vehicle by virtue of joint access and/or control over it for most purposes.  Therefore, M.H. had apparent authority to consent to the vehicle search.

## II.  Defendant's Wife Validly Consented to the Vehicle Search

The Government argues that Defendant's wife, M.H., validly consented to the vehicle search.  Because consent is a well-established exception to the warrant requirement, Defendant's Fourth Amendment rights were not violated.  This Court agrees and finds M.H. validly consented to the search.

The Fourth Amendment protects against unreasonable searches and seizures conducted by law enforcement officers or other government agents.  U.S. Const. Amend. IV; *Katz,* 389 U.S. at 351.  One such exception to the warrant requirement is a search conducted pursuant to consent.  *Schneckloth,*, 412 U.S. at 219.  For a search by consent to be valid, the Government has the burden of proving that consent was: (1) unequivocal, "freely and voluntarily given"; and (2) without duress or coercion, express or implied.  *Id*. at 222; *U.S. v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007).

The burden of proving that consent to search was given freely and voluntarily is always on the Government on a motion to suppress.  *McKneely*, 6 F.3d at 1453.  Courts apply an objective reasonableness test to measure the scope of a person's consent, based on the totality of the circumstances surrounding a search.  *Kimoana*, 383 F.3d at 1223; *Price*, 925 F.2d at 1270 (citing *Schneckloth*, 412 U.S. at 227, 232–33, 249)).

This Court previously found M.H. had both actual and apparent authority to consent to a vehicle search. This Court also finds she validly consented to the search. Defendant does not dispute the voluntariness of his wife's consent.

FBI Special Agent Sam Hartman initially contacted M.H. as a result of a SFPD investigation into the home invasion of Defendant's father-in-law. In executing its search warrant, SFPD discovered a purported bank robbery note possibly tied the Bank of America bank robbery in question and therefore, contacted the FBI. Upon SFPD's suggestion, Special Agent Hartman met with M.H., who was aware that Hartman worked for the FBI. During the interview, Special Agent Hartman sought M.H.'s consent to search the Volkswagen Jetta in question, as she was the registered owner of the vehicle. M.H. agreed and signed and dated the vehicle search consent form in the presence of Special Agent Hartman and other witnesses. Ex. 3. This consent form identified the vehicle and its Vehicle Identification Number ("VIN"). *Id*. Special Agent Hartman believed M.H. could consent to the search since she was the sole registered owner.

This Court finds M.H.'s consent was unequivocal, freely and voluntarily given and without coercion or duress, express or implied. *Schneckloth*, 412 U.S. at 219; *Guerrero*, 472 F.3d at 789. After having interviewed with the SFPD, Defendant's wife freely met with Special Agent Hartman. M.H. was aware Special Agent Hartman worked for the FBI and was involved in an investigation involving her husband. Defendant does not argue nor does the record support a finding that M.H. was under duress or coercion, either express or implied, to consent to the vehicle search. As the registered owner, M.H. signed and dated the FBI vehicle search consent form in the presence of witnesses, which identified the Volkswagen Jetta as the vehicle subject to the search. Based on the FBI consent form and weighing the totality of the circumstances, the scope of the search was objectively reasonable. *Kimoana*, 383 F.3d at

1223. Therefore, this Court finds M.H.'s consent valid, the search lawful, and the evidence discovered should not be suppressed.

### III. Alternatively, the Inevitable Discovery Doctrine Applies

The Government argues that if this Court finds M.H. did not validly consent to the vehicle search, the evidence discovered would have been discovered through other lawful means, *i.e.*, a search warrant. This Court agrees.

When the Government obtains evidence through an unconstitutional search, the evidence is inadmissible under the exclusionary rule unless an exception applies. *See Mapp v. Ohio*, 367 U.S. 643, 655–58 (1961); *United States v. Knox*, 883 F.3d 1262, 1273 (10th Cir. 2018). "In addition, a defendant may also suppress any other evidence deemed to be 'fruit of the poisonous tree,' (i.e., evidence discovered as a direct result of the unlawful activity), by showing the requisite factual nexus between the illegality and the challenged evidence." *United States v. Olivares-Rangel*, 458 F.3d 1104, 1108–09 (10th Cir. 2006).

One of the exceptions to the exclusionary rule is the inevitable discovery doctrine. *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005). This exception "permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it." *Id.* (internal quotations omitted). Thus, the inevitability of discovering evidence by lawful means removes the taint from evidence first discovered through unlawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984).

The burden rests on the Government to prove "by a preponderance of the evidence that the evidence at issue would have been discovered without the Fourth Amendment violation." *Cunningham*, 413 F.3d at 1203. "What makes a discovery inevitable is not probable cause alone but probable cause plus a chain of events that would have led to a warrant (or another justification) independent of the search." *United States v. Souza*, 223 F.3d 1197, 1204 (10th Cir. 2000) (internal quotations and

10

alterations omitted). "In determining whether the government has met its burden of proof, [the Court must] consider demonstrated historical facts, not speculative elements." *United States v. White*, 326 F.3d 1135, 1138 (10th Cir. 2003) (internal quotations omitted).

Here, SFPD discovered the purported bank robbery note in its lawful search of Defendant's vehicle on November 29, 2021. At that time, the FBI was conducting an unrelated, parallel investigation of the October 30, 2021, Santa Fe bank robbery. Ultimately, a court can apply the inevitable discovery doctrine "when it has a high level of confidence that the warrant in fact would have been issued and that the specific evidence in question would have been obtained by lawful means. Inevitable discovery analysis thus requires the court to examine each of the contingencies involved that would have had to have been resolved favorably to the government in order for the evidence to have been discovered legally and to assess the probability of the contingencies having occurred." *Cunningham*, 413 F.3d at 1203.

In its November 30, 2021, interview with M.H., FBI Special Agent Sam Hartman asked for permission to search the Volkswagen Jetta, to which she agreed. The FBI's bank robbery investigation was an independent line of investigation from SFPD's home invasion investigation. *See United States v. Owens*, 782 F.2d 146, 152 (10th Cir. 1986). Furthermore, it was reasonable for the FBI to have asked M.H. for consent to search the vehicle instead of obtaining a search warrant. The FBI learned of the note twenty-four hours before the interview. As the registered owner, had M.H. withheld consent, the FBI reasonably would have sought a search warrant since it was likely the vehicle implicated in its bank robbery investigation. Therefore, the discovery of the handwritten note in Defendant's vehicle was inevitable regardless of the search in question. As in both *Cunningham* and *Souza*, here there appears to be "one line of investigation that would have led inevitably to the obtaining of a search warrant by independent lawful means but was halted prematurely by a search subsequently contended to be illegal."

*United States v. Christy,* 739 F.3d 534, 540 (10th Cir. 2014) citing, *Cunningham*, 413 F.3d at 1204; *Souza,* 223 F.3d at 1200, 1202. Defendant's contention that the application of the inevitable discovery doctrine is mere speculation is not well taken. The vehicle and its contents had already been subject to an independent, lawful SFPD search. Furthermore, Defendant was already the subject of the FBI's bank robbery investigation even prior to the discovery of the purported bank robbery note by SFPD. M.H.'s consent to the search merely accelerated its independent discovery by waiving the warrant requirement. Therefore, the inevitable discovery doctrine exception to the Fourth Amendment is applicable.

In sum, this Court finds that even if M.H. did not validly consent to the warrantless vehicle search, discovery of the vehicle's contents, including the purported bank note, was inevitable. Therefore, the inevitable discovery doctrine is applicable.

## IV. Alternatively, the Good Faith Exception Applies

The Government asserts that if this Court finds M.H. did not validly consent to the search, the good faith exception to the exclusionary rule applies. The Government contends that unconstitutional searches conducted in good faith via uncertainty, or a reasonable, mistaken belief of law can trigger the good faith exception, which would be the case here. This Court agrees.

An exception to the exclusionary rule, the good faith exception, permits the admission of evidence, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrent value of suppression is diminished." *Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419, 2422 180 L. Ed. 2d 285 (2011). In such cases, the exclusionary rule does not apply, and the evidence is admissible.

Here, searches and seizures conducted based on mistakes of fact can be reasonable. *Heien v. North Carolina*, 574 U.S. 54, 61 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014). Warrantless searches, if reasonable, remain lawful when officers obtain consent from someone with apparent authority to

consent. *Id.*, citing *Illinois v. Rodriguez*, 497 U.S. 177, 183–186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). As the Supreme Court described, "[t]he limit is that "the mistakes must be those of reasonable men." *Heien,* 574 U.S. at 61 citing, *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

In this case, it was reasonable for FBI Special Agent Hartman to ask M.H., the registered owner of the vehicle, for her permission to search the vehicle. Furthermore, it was objectively reasonable for him to believe that this consent was valid since she had both actual and apparent authority. This Court does not find, and Defendant does not allege that the FBI was dishonest or reckless in its decision to seek M.H.'s permission and then subsequently search the vehicle. Therefore, there is no indication to this Court that suppression is warranted to deter police misconduct. As such, even if M.H. did not validly consent to the vehicle search, the FBI's reliance on her consent was done in good faith and the exclusionary rule does not apply.

## CONCLUSION

This Court finds M.H., Defendant's wife, had actual and apparent authority as the registered owner of the vehicle to consent and validly consented to the vehicle search. The subsequent search and the evidence flowing from it were lawfully discovered.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress (Doc. 59) is **DENIED**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE